# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL SESSION, 1999

FILED

June 4, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 01C01-9807-CR-00305** |
| | **)** | |
| Appellant, | **)** | |
| | **)** | |
| | **)** | **WILSON COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. BOBBY CAPERS,** |
| **KENNETH BRYAN HARRIS,** | **)** | **JUDGE** |
| | **)** | |
| Appellee. | **)** | (State Appeal) |

ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF WILSON COUNTY

FOR THE APPELLANT:

FRANK LANNOM
102 East Main Street
Lebanon, TN 37087

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KIM R. HELPER
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

TOM P. THOMPSON, JR.
District Attorney General

WILLIAM REED
District Attorney General Pro Tempore
363 Court Street
Maryville, TN 37804-5906

OPINION FILED _____

REVERSED AND REMANDED

DAVID H. WELLES, JUDGE

# OPINION

The State appeals from three decisions of the Wilson County Criminal Court concerning Defendant Kenneth Bryan Harris. The State contends that the trial court erred by (1) dismissing Defendant's superseding, two-count indictment for attempted first degree murder and aggravated assault; (2) denying the State's motion to nolle prosequi the initial indictment charging aggravated assault; and (3) reversing the district attorney general pro tempore's decision to deny Defendant pretrial diversion for the initial charge of aggravated assault.

The facts we glean from the limited record reveal that Defendant and the victim in this case were neighbors engaged in a dispute. Shortly before the conflict at bar, Defendant had accused the victim of threatening to kill him with a gun, resulting in an indictment against the victim. Later, on January 21, 1996, Defendant saw the victim walking his dog, stopped and exited his car with his .38 caliber pistol, allegedly threatened to kill the victim, and fired five shots at the victim.

Defendant claims that while he was driving, the victim began to walk to the center of the street toward his car. Defendant states that when the victim reached behind his back, as if for a weapon, Defendant fired a warning shot, after which the victim began to run toward the car. Defendant then fired four more shots, injuring the victim. Defendant then called emergency assistance for the victim, who has suffered irrevocable paralysis from the chest down as a result of the shooting.

The Wilson County Grand Jury indicted Defendant on March 18, 1996 for one count of aggravated assault; and because of the prior indictment pending against the victim, a district attorney general pro tempore was appointed to prosecute the case. On November 12, 1996, Defendant filed an application for pretrial diversion, which is authorized by law for the offense of aggravated assault. On December 12, 1996, the State responded by securing a superseding indictment from the grand jury for aggravated assault and attempted first degree murder, the latter of which does not qualify for pretrial diversion.

The State moved the trial court on May 8, 1997 to nolle prosequi the initial indictment in favor of the superseding indictment. On March 31, 1998, the State denied Defendant's motion for pretrial diversion on the original indictment, and Defendant filed a response the same day opposing the State's motion to nolle the original indictment.

On April 14, 1998, the trial court denied the State's motion to nolle the first indictment; dismissed the superseding, two-count indictment; and scheduled a hearing to review the State's denial of pretrial diversion. Following the hearing, the trial court found that the district attorney general pro tempore abused his discretion by denying Defendant pretrial diversion and ordered that a Memorandum of Understanding be entered for a two-year period. On June 5, 1998, the State filed its notice of appeal under Tennessee Rule of Appellate Procedure 3.

## I. DISMISSAL OF SUPERSEDING INDICTMENT
## AND DENIAL OF MOTION TO <u>NOLLE PROSEQUI</u>

As a preliminary procedural matter, Defendant challenges the timeliness of the State's appeal, contending that the appeal, filed under Tennessee Rule of Criminal Procedure 3, should have been filed within thirty days of April 14, 1998, the date the trial court denied the motion to <u>nolle</u> the original indictment and dismissed the superseding indictment. <u>See</u> Tenn. R. App. P. 3(c)(1), (4). The State did not file its notice, however, until June 5, 1998.

The State responds by arguing in the alternative. First, it asserts that because "the proceeding did not conclude with the dismissal of the superseding indictment, . . . an appeal at that time under Rule 3 may have been premature." Second, the State contends that if we find that a notice of appeal should have been filed within thirty days of April 14, we should waive proper filing in the interest of justice, pursuant to Tennessee Rule of Appellate Procedure 4(a).

At the time the trial judge dismissed the superseding indictment, the original indictment remained pending in the trial court; and prohibiting a <u>nolle</u> of the original indictment ensured that the indictment would continue to be prosecuted in that court. The unusual procedural circumstances presented in this case have convinced us that no benefit would result from an attempt to analyze the issue of timeliness based upon prior decisions and rules of court.

Had the State immediately appealed the dismissal of the superseding indictment, the original indictment would have remained pending in the trial court during the pendency of the appeal. Had the trial judge not granted the Defendant

-4-

pretrial diversion on the original indictment, the State might have elected to proceed to trial on the original indictment rather than pursue an appeal of the dismissal of the superseding indictment, although perhaps the State could have pursued both options simultaneously. The order of the trial court granting the Defendant pretrial diversion was not entered until May 6, 1998. The notice of appeal was filed within thirty days thereafter.

Without deciding whether the State should have filed its notice of appeal within thirty days of April 14, we conclude that even if it should have, the interests of justice nevertheless merit this Court's consideration of the substantive issues—whether the trial court erred by denying the State's motion to nolle the original indictment and by dismissing the superseding, two-count indictment. See State v. Burrow, 769 S.W.2d 510, 511 (Tenn. Crim. App. 1989) ("The notice of appeal can be waived by this Court 'in the interest of justice' . . . without regard to whether it is the defendant or the state seeking waiver.").

*A. Dismissal of Superseding Indictment*

Following our review of the record, we conclude that the trial court did err by dismissing the superseding indictment for aggravated assault and attempted first degree murder. In Tennessee, the district attorney general possesses "the power and authority to make charging decisions without veto," subject to constitutional constraints. Quillen v. Crockett, 928 S.W.2d 47, 51 (Tenn. Crim. App. 1995). This significant authority is also granted to a district attorney general pro tempore by appointment pursuant to Tennessee Code Annotated § 8-7-106(b)(1).

-5-

The United States Supreme Court stated in <u>Bordenkircher v. Hayes</u>, 434 U.S. 357 (1978), "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense, the decision whether to prosecute, and what charge to bring before a grand jury generally rests entirely within the discretion of the prosecution . . . ." <u>Id.</u> at 364; <u>State v. Superior Oil, Inc.</u>, 875 S.W.2d 658, 660 (Tenn. 1994) (quoting <u>Bordenkircher</u>, 434 U.S. at 364). Furthermore, the Supreme Court also held that "[a]n indictment . . . , if valid on its face, is enough to call for a trial of the charge on the merits." <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956); <u>see</u> <u>United States v. Calandra</u>, 414 U.S. 338, 345 (1974).

In this case, the State attested in its motion (1) that the district attorney general, prior to his recusal, sought and obtained the original indictment for aggravated assault from the Wilson County Grand Jury, and (2) that "[a]fter an independent evaluation by the district attorney general <u>pro tempore</u> of the facts, circumstances, evidence and the law the district attorney general <u>pro tempore</u> resubmitted the case to the Wilson County Grand Jury," resulting in the elevated charge.

In its order dismissing the subsequent indictment, the trial court made no findings of fact and offered no reasons for dismissing the superseding indictment. When moved by the State to "issue a written order setting forth the basis for its ruling," the trial court did not comply. Because the second indictment was duly obtained from the Wilson County Grand Jury by the district attorney general <u>pro tempore</u>, within the appropriate exercise of his discretion following his appointment to the case and his detailed review of the facts and circumstances,

-6-

we conclude that the trial court exceeded its authority by dismissing the indictments, and we reverse this dismissal.

*B. Denial of Motion to Nolle Prosequi*

The district attorney general is "'answerable to no superior and has virtually unbridled discretion in determining whether to prosecute and for what offense. No court may interfere with [that] discretion to prosecute, and in the formulation of this decision he or she is answerable to no one.'" Dearborne v. State, 575 S.W.2d 259, 262 (Tenn. 1978) (quoting Pace v. State, 566 S.W.2d 861, 867 (Tenn. 1978) (Henry, C.J., concurring)); see also Bordenkircher, 434 U.S. at 364 (holding that "the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion").

In State v. Gilliam, this Court stated, "Neither the appellant nor this court has the right to elect which applicable statute shall be the basis of [the defendant's] indictment, subject to procedural bars and the constitutional restraints of equal protection and double jeopardy." 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995). In addition, "the courts are not to interfere with the free exercise of this discretionary authority in [the district attorney general's] control over criminal prosecution." Id.

Tennessee Rule of Criminal Procedure 48 states, "The state may by leave of court file a dismissal of an indictment, presentment, information or complaint and the prosecution shall thereupon terminate." Tenn. R. Crim. P. 48 (a) (emphasis added). However, the trial court may not in essence compel the State

to prosecute a case that the State does not desire or intend to prosecute. Although Rule 48 requires "leave" of the trial court to remove the case from its docket, the trial court does not possess the authority or the power to exercise its own discretion to determine whether a case should or should not be prosecuted. We reverse the trial court's decision denying the State's motion to nolle the original indictment.

## II. REVERSAL OF DENIAL OF PRETRIAL DIVERSION

Although disposition of the preceding issues pretermit any decision by this Court on the issue of whether the trial court erred by reversing the district attorney general pro tempore's denial of pretrial diversion,[1] we address the issue solely for the purpose of facilitating future appellate review in this case.

As a preliminary procedural matter, Defendant challenges the propriety of the State's appeal of this issue under Tennessee Rule of Appellate Procedure 3, contending that the appeal should have been filed under Rule 9 or Rule 10. He argues that under State v. Montgomery, 623 S.W.2d 116 (Tenn. Crim. App. 1981), and its successors, an appeal of pretrial diversion under Rule 3 is impermissible. In Montgomery, this Court stated that "an appeal by either side questioning diversion decisions, either granted or denied, must be brought under Rule 9 or Rule 10, T.R.A.P., and cannot come by Rule 3." Id. at 118.

---

[1] Because we have determined that Defendant's indictment for attempted first degree murder, a class A felony, is valid and pending, Defendant is no longer eligible for pretrial diversion.

We agree with the State that the rule as stated in Montgomery has been effectively abrogated by Tennessee Rule of Criminal Procedure 38. Effective July 1, 1997, Rule 38 provides,

> A defendant who seeks and is denied pre-trial diversion pursuant to T.C.A. § 40-15-105 shall have the right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion. If the trial court finds that the prosecuting attorney has not committed an abuse of discretion in failing to grant pre-trial diversion, the defendant may pursue an interlocutory appeal pursuant to either Rule 9 or Rule 10 of the Tennessee Rules of Appellate Procedure. In the event that the defendant does not pursue an interlocutory appeal, the defendant shall have the right to appeal the decision of the trial court denying the petition for writ of certiorari pursuant to Tennessee Rule of Appellate Procedure 3(b) following the entry of the final judgment in the trial court.

Tenn. R. Crim. P. 38. Furthermore, the Advisory Commission Comments state, "This rule changes prior case law and practice regarding appeal of the denial of pre-trial diversion from the trial court." Id. (advisory commission comments).

Rule 38, as Defendant suggests, does not on its face apply to appeals by the State of diversion decisions, nor are we aware of any decisions construing this rule to apply to appeals by the State. We need not decide whether the drafters of Rule 38 intended to permit Rule 3 appeals by the State on pretrial diversion decisions by the trial court. When the trial court reversed the State's decision to deny pretrial diversion, this order effectively terminated prosecution of the case. We conclude that the State thereby had an appeal as of right from the judgment under Rule 3. Therefore, we evaluate the substantive issue appealed.[2]

---

[2] Even had the appeal under Rule 3 been improper, Tennessee courts have long recognized that we may "transform an appeal improperly filed under Rule 3 of the Tennessee Rules of Appellate Procedure into a proper appeal under Rule 10 of the Tennessee Rules of Appellate Procedure." State v. Leath, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998); State v. Gallaher, 730 S.W.2d 622, 623 (Tenn. 1987); State v. David C. Doyal, No. 03C01-9712-CR-00552, 1998 WL 597081, at *1 (Tenn. Crim. App., Knoxville, Sept. 10, 1998).

The supreme court has set forth the factors for consideration by a district attorney general when determining the propriety of pretrial diversion:

> When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983); State v. Carolyn L. Curry, No. 02S01-9709-CC-00079, 1999 WL 115113, at *3 (Tenn., Jackson, Mar. 8, 1999) (for publication); State v. Pinkham, 955 S.W.2d 956, 959-60 (Tenn. 1997) (both quoting same from Hammersley).

In State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989), the supreme court described the necessary detail by which the district attorney general must state reasons for denying an application for pretrial diversion:

> If the application is denied, the factors upon which the denial is based must be clearly articulable and stated in the record in order that meaningful appellate review may be had. This requirement entails more than an abstract statement in the record that the district attorney general has considered these factors. He must articulate why he believes a defendant in a particular case does not meet the test. If the attorney general bases his decision on less than the full complement of factors enumerated in this opinion he must, for the record, state why he considers that those he relies on outweigh the others submitted for his consideration.

Id. at 156 (citation omitted).

-10-

In his letter denying Defendant pretrial diversion on the original indictment for aggravated assault, the district attorney general pro tempore stated,

> In making a decision as to the application for pre-trial diversion on the charge of aggravated assault, I have considered the following material and information: (1) The defendant's biographical background and family relationships; (2) The defendant's lack of prior criminal convictions; (3) The letters of support from the defendant's friends, employer, and political acquaintances; [and] (4) The pre-sentence investigation report prepared by the probation officer.

> After consideration of all the material and information it is my decision to deny Mr. Harris' application for pre-trial diversion on the charge of aggravated assault. While Mr. Harris does appear to enjoy a very favorable reputation among his friends, neighbors, employers, and political contacts, the fact remains that the gentleman with whom he had an altercation on January 21, 1996 was paralyzed from the chest down as a result of being shot by Mr. Harris. Apparently the events of January 21, 1996 were precipitated in whole, or at least in part, because of prior conflicts between the victim and the defendant, who were neighbors. It is certainly not unusual for neighbors and adjoining property owners to have disputes and conflicts as they have had from the beginning of time; however, thankfully, it is fairly infrequent that these conflicts turn into armed violence. In my estimation, others in any given community need to feel assured that these types of conflicts will not be ignored by law enforcement and the criminal justice system. A granting of pre-trial diversion under the circumstances of this case would only serve to further erode public confidence in the criminal justice system and would promote an atmosphere of lawlessness.

> Notwithstanding, Mr. Harris' good standing in the community as well as the apparent likelihood that he will not become a repeat offender, it is my considered judgment that pre-trial diversion would not serve the ends of justice and the best interest of the public and the defendant. I primarily base this opinion upon the great weight I accord to the circumstances of this case wherein a previously healthy individual has been rendered permanently and irrevocably paralyzed by the actions of the defendant. Moreover, it is equally my opinion that the citizens in this and other communities should have confidence that the criminal justice system will intervene when neighborhood and community disputes escalate into armed conflict.

When making pretrial diversion decisions, a district attorney general may properly give nearly exclusive weight to the circumstances of the offense. See State v. Carolyn L. Curry, No. 02S01-9709-CC-00079, 1999 WL 115113, at *5

-11-

(Tenn. Mar. 8, 1999) (for publication); State v. Stephen Freeman, No. 03C01-9712-CC-00523, 1999 WL 96272, at *3 (Tenn. Crim. App., Knoxville, Feb. 22, 1999). At the time the District Attorney General pro tempore denied the Defendant's application for pre-trial diversion for the charge of aggravated assault, an indictment against the Defendant for attempted first degree murder was pending.

The Tennessee Supreme Court stated in Curry that "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered as well." Curry, 1999 WL 115113, at *5 (emphasis added). In addition, the court declared, "The facts and circumstances of nearly all criminal offenses are by definition serious; only by analyzing all of the relevant factors, including those favorable to the defendant, can appropriate candidates for this legislative largess be identified in a manner consistent with the purpose of the pretrial diversion act." Id. Furthermore, in Freeman, this Court held,

> Although the appellant may appear to be an excellent candidate for pretrial diversion, the focus of diversion does not rest solely upon the alleged offender. In appropriate cases, the circumstances of the offense and the need for deterrence may outweigh all other relevant factors and justify a denial of pretrial diversion.

Id.

We find that the district attorney general pro tempore followed the requirements of Hammersley, Herron, and Curry when both making and reporting his decision to deny pretrial diversion. We conclude that the trial court erred by finding that the district attorney general abused his discretion.

We reverse the order of the trial court denying the State's motion to <u>nolle prosequi</u> the original indictment for aggravated assault and dismissing the second indictment for aggravated assault and attempted first degree murder. We also reverse the judgment of the trial court granting the Defendant pretrial diversion. This case is remanded for further proceedings.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
JAMES CURWOOD WITT, JR., JUDGE